# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL A. WILSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:17CV00092 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JEFFREY KISER, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Michael A. Wilson, Pro Se Plaintiff; Laura H. Cahill, Office of the Attorney General, Richmond, Virginia, for Defendants.*

Michael A. Wilson, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. §§ 1983, 1985, and 1986. He alleges that the defendant prison officials conspired to abduct him while armed with a weapon. After review of the record, I conclude that Wilson is barred from pursuing his claims because he failed to exhaust his administrative remedies before filing this action.

I.

In February 2017, Wilson was incarcerated in the protective custody unit at Red Onion State Prison ("Red Onion"). Toward the end of the month, he filed an Informal Complaint alleging that defendant Swiney had "order[ed] his officer to false[ly] imprison [Wilson]." Mem. Supp. 5, ECF No. 1-1. One morning about a week later, defendant Gwynn escorted Wilson to the office of defendant Stanley,

who was the building supervisor. Stanley sat behind his desk, while Gwynn, Phillips, and Stallard "cornered" Wilson inside the office. *Id.* Stanley allegedly held up the Informal Complaint about Swiney and "screamed at [Wilson] in a violent and threatening manner . . . 'What is this bullshit?'" *Id.* Then, Stanley allegedly "pulled out a weapon, and placed the Informal Complaint form over the weapon to obstruct the view of the Rapid Eye camera, and further stated, 'Do you see this? You ain[']t leaving this office until you withdraw this bullshit complaint against my officers.'" *Id.* at 6. Wilson describes the weapon as "a home made knife." *Id.*

Wilson alleges that because the other officers blocked his "retreat to safety, out of fear of [his] life that Defendant Stanley would use the weapon, and the other defendants would further conspire to cover up the crimes, [he] was forced to sign, agree, and withdraw" the Informal Complaint against Swiney. *Id.* Wilson also allegedly notified defendant Kiser of these events, but Kiser "refuse[d] to correct the problems concerning the unequal treatment of inmates housed within the protective custody unit at Red Onion," and Kiser and Ponton "knowingly failed to prevent the conspiracy" that occurred on March 1. *Id.* Wilson also alleges that after his arrival at Red Onion, an Officer Moore told him "'the reason why yall [sic] was transferred here is to force you to sign off protective custody, and return

to general population, because its too many of yall in here." *Id.* at 7. Wilson states:

> Upon reliable information and belief [he] declares that Defendant Henry Ponton is legally responsible for the premeditation of the true motives behind the transfer of [Wilson] and protective custody unit to Red Onion . . . to deprive [him] of due process and equal protections, and gave orders to do whatever it takes to reduce the African-American population.

*Id.* He states that defendants Kiser and Ponton "possessed the power to prevent or aid in preventing conspiratorial wrongs, and they failed or neglected to act." *Id.*

Wilson filed this civil rights action in against Kiser, Swiney, Phillips, Gwynn, Stanley, Ponton, and Stallard. He contends that their actions constituted a conspiracy to commit the crime of abduction with a weapon and to use that weapon to force him to "divest his constitutional rights in exchange for his freedom." *Id.* at 8. As relief in this action, Wilson seeks declaratory, injunctive, and monetary relief.

The defendants have filed a Motion for Summary Judgment, contending, among other things, that Wilson failed to exhaust his administrative remedies before filing this action as required by 42 U.S.C. § 1997e(a). Wilson has responded to the defendants' motion, making it ripe for disposition.[1]

---

[1] Wilson has also filed requests for discovery, and the defendants have filed a motion seeking a protective order until the exhaustion issue is resolved. Because Wilson fails to show that the requested discovery is necessary to his opposition to the defendants' summary judgment motion, *see* Fed. R. Civ. P. 56(d), I conclude that the outstanding

II.

The Prison Litigation Reform Act ("PLRA") provides that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted the available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement is "mandatory," *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

As stated, the defendants argue that Wilson did not exhaust his available administrative remedies before filing this lawsuit. In support of this contention, they present an affidavit from River North Grievance Coordinator J. Messer.

Operating Procedure 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a). Mem. Supp. Mot.

---

discovery has no bearing on my decision to grant summary judgment for the defendants under § 1997e(a). Therefore, I will dismiss the Motion for Protective Order as moot.

Summ. J., Messer Aff. ¶ 4 and Enclosure A, ECF No. 26-1. "All issues are grievable except those pertaining to the policies, procedures, and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal Court decisions, laws and regulations, and other matters beyond the control of the Virginia Department of Corrections (VDOC)." *Id.* at ¶ 5. Under this procedure, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal Complaint form and submitting it to prison staff. *Id.* at ¶ 6. He will receive a written response on the bottom of the Informal Complaint form within fifteen days, in order to allow him to initiate the formal grievance procedure by filing a Regular Grievance within thirty days of the occurrence about which it complains. *Id.* After investigation of the Regular Grievance, the warden or his designee will send the inmate a Level I response. *Id.* at 8. If the responding official determines the grievance to be unfounded, the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III. *Id.*

The defendants bear the burden of proving the affirmative defense that Wilson failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Messer states that based on a review of prison records of administrative remedy forms Wilson has submitted since March 1, 2017, Wilson did not submit any Informal Complaint or

Regular Grievance about the events alleged in his § 1983 action. Mem. Supp. Mot. Summ. J., Messer Aff. ¶ 10, ECF No. 26-1. Messer also states that since March 1, Wilson has filed five Informal Complaint forms on other issues. Wilson does not disagree with Messer's representation about his failure to present his current claims to prison officials through the OP 866.1 grievance procedures or offer evidence to the contrary. Accordingly, I conclude that the defendants have established Wilson's failure to exhaust administrative remedies as required under § 1997e(a).

An inmate may escape summary judgment under § 1997e(a) if he presents facts showing that the remedies under the established grievance procedure were not available to him. *Ross*, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Wilson has not offered any evidence that anything or anyone prevented him from utilizing the steps of the Red Onion grievance procedures. In his initial submissions, he stated that he was excused from the exhaustion requirement, because the alleged "crimes" of the defendants were nongrievable. Mem. Supp. Letter, ECF No. 1-2. This contention is not supported by the record. I find no provision in OP 866.1 declaring that officers' actions of the type Wilson has

alleged cannot be raised under the steps of this procedure. Wilson has also submitted a Verified Statement in which he claims that he had no administrative remedies available in March 2017, "either because the issue . . . [was] nongrievable" or because the prison facility had no grievance procedure. V.S., ECF No. 2. The defendants' undisputed evidence about OP 866.1 disproves both of these statements, however.

Wilson alleges that he "immediately reported the crimes on the P.R.E.A. hotline" that day and made a "follow up call on March 2, 2017, due to the serious nature, and the influences of the defendants [his] only source to seek help was the P.R.E.A." Mem. Supp. 6, ECF No. 1-1. "The PREA sexual abuse hotline is one facet of Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 038.3, a set of Prison Rape Elimination Act ("PREA") procedures adopted in response to a federal law by that title, 42 U.S.C. §§ 15601-15609." *Cooper v. Duncan*, No. 7:16CV00578, 2017 WL 2271501, at *1 n.1 (W.D. Va. May 23, 2017). OP 866.1 does not provide for VDOC inmates to substitute a PREA telephone report in place of an Informal Complaint or a Regular Grievance, followed by appeals. Moreover, Wilson states no facts showing that he was unable to pursue these normal administrative remedies in addition to his PREA hotline report.

Finally, in his unverified response to the defendants' motion, Wilson states that he "was unable to comply with 42 U.S.C. § 1997e(a) due to extreme circumstances," namely, "due to the incident which occurred on March 1, 2017." Reply 2, 4, ECF No. 29. He also submits an affidavit from another inmate, Malcolm L. Bailey, who describes being taken to Stanley's office within five minutes of Wilson's incident, and held there until he withdrew an Informal Complaint.[2]

Under some circumstances, officers' actions that "thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations" may be sufficient to show that the grievance procedure was unavailable to the inmate. *Ross*, 136 S.Ct. at 1862. Even taking Wilson's allegations in the light most favorable to him, I cannot find that he has alleged such circumstances here. The March 1 incident itself cannot excuse Wilson's failure to pursue administrative remedies about that incident. OP 866.1 requires the inmate to make a good faith effort to resolve the issue raised in the Informal Complaint. Mem. Supp. Mot. Summ. J., Messer Aff. ¶ 6, ECF No. 26-1. Such efforts will require him to discuss the complaint with officers, a process that may not always

---

[2] Bailey states that on March 1, 2017, the same officers took Bailey to the office where Stanley was, "armed with a home made knife & threatened [him] to use, or fabricate evidence against [him] with the knife if [he] refused to withdraw an informal complaint about an unrelated matter." Bailey Aff., ECF No. 9. Bailey alleges that he "was not allowed to leave the office until [he] withdrew the informal complaint" and that "[o]ut of fear of [his] life," he reported the incident using the PREA hotline. *Id.*

be pleasant. Wilson does not allege that Stanley threatened to use the knife to harm him in any way, or that the officers made no attempt to understand and resolve his complaint against Swiney. Wilson apparently believes that the officers threatened his safety in some way, but he simply states no facts showing that such fears were reasonable or that their actions "thwarted the effective invocation of the administrative process." *Ross*, 136 S.Ct. at 1862. Certainly, Wilson provides no basis for a finding that administrative remedies were not available concerning his allegations against the supervisory officials who were not present in Stanley's office on March 1, 2017, namely Kiser, Swiney, and Ponton.

I thus find no material fact in dispute on which Wilson could persuade a reasonable fact finder that the established administrative remedies were unavailable to him. Because he failed to file a regular grievance within the timeline dictated by OP 866.1, or to show that this process was unavailable, his claims in the Complaint are unexhausted and must be dismissed.[3]

---

[3] I also note that Wilson has no viable civil claim that the defendants committed a criminal offense against him on March 1, 2017. *See, e.g., Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) (holding that inmates allegedly beaten by prison guards had no judicially cognizable interest in the criminal prosecution of those guards).

III.

For the stated reasons, I will grant the defendants' Motion for Summary Judgment under § 1997e(a) as to Wilson's claims.[4] Because I find it clear from the record that Wilson no longer has an available administrative remedy regarding these claims, I will dismiss them with prejudice.

A separate Order will be entered herewith.

DATED: October 16, 2017

/s/ James P. Jones
United States District Judge

---

[4] In Wilson's response to the defendants' motion, he complains about other alleged incidents in July 2017 and asking for a temporary restraining order or preliminary injunction. Specifically, he alleges that Stanley asked him "to drop the Complaint because he has been cleared by Internal Affairs"; that Stanley placed a "false disciplinary infraction" against him, causing him to be placed "on strip cell"; that Swiney ordered Sgt. Fleming "to take [Wilson's] job and harass and retaliate against [him] in order to get [him] to drop the Civil Complaint"; that an unnamed officer threatened Wilson "to get in compliance or [he] may not get any meals for the whole day"; and that officers denied him outside recreation and/or showers "for no reason at all." Reply 2-3, ECF No. 29. These much later incidents, even if proven, have no bearing on my decision that Wilson failed to exhaust his administrative remedies about the March 1 incident and related claims within the time limits under OP 866.1.

Moreover, I find no basis for construing the response as a motion seeking to add new claims to the action or for interlocutory injunctive relief. Wilson does not demonstrate that he exhausted his available administrative remedies as to these additional incidents. Many of these incidents also involve nondefendants and are not properly joined to his initial claims. *See* Fed. R. Civ. P. 18, 20. Accordingly, I do not consider the allegations in his response to be claims properly raised before the court in this action. I also find no factual basis for the extraordinary interlocutory relief he seeks related to these incidents. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).